IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| CHARLES S. BURKS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14-CV-01121-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE ADMINISTRATIVE LAW JUDGE'S DECISION

Plaintiff Charles S. Burks petitions for review of an adverse decision by Defendant, the Acting Commissioner of Social Security ("Commissioner"). Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The administrative law judge ("ALJ") found Plaintiff had multiple severe impairments, including degenerative disc disease, high blood pressure, gastroesophageal reflux disease, degenerative joint disease of the left knee, depression, and anxiety, but retained the residual functional capacity ("RFC") to perform work as a bench assembler, compact assembler, or credit checker.

As explained below, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is therefore AFFIRMED.

**Procedural and Factual Background**

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed the pending application on October 4, 2011, alleging a disability onset date of December 9, 2009. The Commissioner denied the application at the initial claim level, and Plaintiff appealed the denial to the ALJ. On July 16, 2013, the ALJ held a hearing and on

1

August 23, 2013, the ALJ issued a decision finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on November 3, 2014, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Andrews v. Colvin,* 791 F.3d 923, 928 (8th Cir. 2015). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin,* 789 F.3d 847, 852 (8th Cir. 2015). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

## Discussion

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. § 404.1520(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

2

reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

Plaintiff argues that the ALJ erred by: (1) failing to properly evaluate Plaintiff's credibility and medical opinion evidence in determining Plaintiff's RFC; (2) posing an improper hypothetical to the vocational expert ("VE"); and (3) relying on VE testimony that conflicted with the Plaintiff's limitations. These arguments are without merit.

**I. The ALJ properly weighed the evidence in determining Plaintiff's RFC and Plaintiff fails to impeach the ALJ's credibility analysis.**

Plaintiff takes issue with two sets of evidence weighed by the ALJ in determining Plaintiff's RFC: opinions from medical professionals and Plaintiff's subjective complaints.

**a. The RFC is supported by substantial evidence and the ALJ properly weighed the medical opinions with regard to Plaintiff's physical limitations.**

First, Plaintiff argues the ALJ's RFC calculation as to his physical impairments was not supported by any medical evidence. Pl.'s Br. at 17-19 (Doc. 8).

Plaintiff first argues the ALJ assessed his RFC without any medical evidence, because the ALJ rejected the only medical opinion that addressed his physical limitations–that by Dr. Ditmore. *Id*. at 17-18. Plaintiff contends there are no opinions of record as to Plaintiff's physical functional limitations that were given weight by the ALJ. *Id.* at 18. Plaintiff further argues his RFC is unsupported by the opinions of Dr. Moore and Dr. Harlan and the ALJ erred in giving these opinions little weight. *Id*. at 20.

The ALJ must rely on medical evidence to determine a claimant's RFC. 20 C.F.R. § 404.1545(a)(3). Where there is no substantial medical evidence in the record which addresses Plaintiff's ability to function in the workplace, the ALJ cannot make an informed decision about

3

Plaintiff's functional restrictions. *See Burchard v. Astrue*, No. 1:08CV87SNLJ/LMB, 2009 WL 2836531, at *16 (E.D. Mo. Aug. 28, 2009).

Additionally, "[s]ince the ALJ must evaluate the record as a whole, the opinions of treating physicians do not automatically control." *Bernard v. Colvin*, 774 F.3d 482, 487 (8th Cir. 2014). The Court recognizes that "a treating physician's opinion is generally entitled to substantial weight; however, such an opinion does not automatically control in the face of other credible evidence on the record that detracts from that opinion." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (internal quotations and citation omitted). "Moreover, an ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Id.* An ALJ may justifiably discount a treating physician's opinion when that opinion is inconsistent with the physician's clinical treatment notes." *Id.* When a physician's "opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight." *Id.* Further, an ALJ is entitled to give less weight to a physician's opinion when it is based largely on the patient's subjective complaints rather than objective medical evidence. *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (citing *Vandenboom v. Barnhart*, 421 F.3d 745, 749 (8th Cir. 2005)). Whatever weight the ALJ decides to give a physician's opinion, he must "always give good reasons." 20 C.F.R. § 404.1527(c)(2).

Here, there exists enough evidence that a reasonable mind would find adequate to support the Commissioner's conclusion. For example, the ALJ gave Dr. Ditmore's evaluation little weight, finding instead in Plaintiff's favor that he was *more* limited than Dr. Ditmore suggested.[2] R. at 24. The ALJ also explicitly found that the Plaintiff's treating source failed to provide an

---

[2] Dr. Ditmore found that Plaintiff had some exertional limitations stemming from his physical impairments, but no postural, manipulative, or environmental limitations. R. at 361-63.

4

identifiable cause for Plaintiff's alleged back pain. R. 22. This is supported by Dr. Brantl and Dr. Norregaard's inability to find an "obvious identifiable cause of [Plaintiff's] back pain." R. at 329. The ALJ further relied on "the cumulative medical signs and laboratory findings" to support his conclusion that Plaintiff's back impairment does not result in the extreme functional limitations alleged. R. at 22. These medical signs and laboratory findings included a report from Dr. Carlile, a physician who treated Plaintiff from 2006 until 2013, that Plaintiff was "doing very well" following procedures to correct his degenerative disc disease. R. at 634. While the record does indicate Plaintiff suffered from back pain (a fact noted by the ALJ in his findings), it does not indicate that Plaintiff's degenerative disc disease resulted in extreme limitations of his motor skills or strength. *See, e.g.,* R. at 307 ("Musculoskeletal: Strength 5/5 Upper and Lower extremeties"); 328 ("He reports that he continues to do work requiring lifting, etc."). Therefore, the ALJ had substantial record evidence before him to evaluate Plaintiff's RFC.

Plaintiff further argues substantial evidence on the record as a whole does not support the ALJ's RFC finding with regard to his severe knee impairment. Pl.'s Br. at 18-23. Though the ALJ found that Plaintiff's knee impairment was severe, he determined at Step Four that the impairment did not result in any chronic motor, sensory, reflex, or strength deficits. R. at 22.

In determining a claimant's RFC, the ALJ must consider "all relevant, credible evidence in the record, including medical records, observations of treating physicians and other, and an individual's own description of his limitations." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (internal quotations omitted).

Here, the findings by the ALJ regarding Plaintiff's knee impairment are supported by substantial evidence on the record as a whole. The ALJ considered a magnetic resonance imaging scan that revealed the source of Plaintiff's knee pain and reports of pain elicited by

5

motion of the knee. R. at 22; 538. The ALJ also considered Plaintiff's testimony at the administrative hearing. The pain, rated as a three on a ten-point scale by Plaintiff, is managed with medication. R. at 23. For example, following corticosteroid shots at the Golden Valley Medical Clinic, Plaintiff was "able to ambulate out of the clinic under own power without any difficulty." R. at 600. At a later date, Dr. Womack reported that Plaintiff "ambulates with no assistive devices." R. at 697. The ALJ was not required to order a consultative examination on which to base his RFC finding because the medical records presented to him provided a sufficient basis to determine whether Plaintiff was disabled. *See McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) ("The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled.").

Because the ALJ considered supporting evidence from medical professionals, this Court finds the ALJ's RFC determination was founded on substantial evidence with regard to Plaintiff's back and knee impairments.

### b. The ALJ properly weighed the medical evidence with regard to Plaintiff's mental impairments.

Plaintiff argues the ALJ's mental RFC determination is unsupported by certain medical opinions. Pl.'s Br. at 19-21. The ALJ gave little weight to the opinions of Dr. Moore and Dr. Harlan. R. at 24. Partial weight was given to the opinion of Dr. Parks. *Id.*

Here, the ALJ gave little weight to the opinions of Doctors Moore and Harlan because the medical signs presented during their examination were abnormal and contradicted by subsequent medical testing. R. at 24; 380-95. The ALJ noted that a month after this examination, Plaintiff reported to a registered nurse that he had no history of psychiatric problems. R. at 474. Plaintiff also denied a history of psychiatric problems at his March 2011 meeting with Dr. Parks. R. at

253. The ALJ further attributed partial weight to the findings of Dr. Parks because Dr. Parks relied primarily on Plaintiff's self-reported symptoms in making her assessment. R. at 24; 251-56.

Because the ALJ was entitled to attribute less weight to medical opinions where they were contradicted by the record or based on Plaintiff's subjective complaints rather than objective medical evidence, the ALJ did not err in weighing the medical evidence with regard to Plaintiff's mental impairments.

### c. Plaintiff fails to impeach the ALJ's credibility analysis.

Plaintiff asserts the ALJ failed to include his own findings of mild difficulties maintaining social functioning in the RFC determination. Pl.'s Br. at 25. The record directly refutes this claim. In analyzing a claimant's subjective complaints, the Court takes into account any objective medical basis that should support subjective testimony of limitations and "all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and examining physicians." *Wright*, 789 F.3d at 853 (quoting *Polaski*, 739 F.2d at 1322). Because the ALJ "is in a better position to gauge credibility and resolve conflicts in evidence," this Court will not substitute its opinion for the ALJ's where there is substantial evidence to support the outcome. *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007).

Here, the ALJ provided several well-supported reasons for discounting Plaintiff's credibility. The ALJ took into consideration both the objective medical evidence on the record and Plaintiff's daily activities. The ALJ's opinion specifically mentioned the inconsistencies between Plaintiff's social functioning testimony and his appearance and demeanor at the administrative hearing. R. at 23. For example, Plaintiff reported that he requires someone to

7

Case 4:14-cv-01121-DGK   Document 19   Filed 01/26/16   Page 7 of 10

accompany him places and that he was able to leave home independently. R. at 181-82. Plaintiff testified that he had no friends, yet was driven to a doctor's examination by a friend. R. at 40; 254. The ALJ further stated that Plaintiff's "anxiety and depression are not documented with sufficient abnormal findings to support a finding that he is unable to perform simple work" within the limitations listed in his hypothetical given to the VE. R. at 21-23. These were valid reasons to discount Plaintiff's subjective complaints. *See McMurray v. Astrue*, 376 F. App'x 650 (8th Cir. 2010) (lack of objective medical evidence a valid reason for discounting plaintiff's credibility); *Johnson v. Apfel*, 240 F.3d 1145, 1147-48 (8th Cir. 2001) (proper to consider ALJ's personal observations of plaintiff's demeanor in making credibility determinations); *White v. Colvin*, No. 2:14CV55NCC, 2015 WL 5226216, at *12-13 (E.D. Mo. Sept. 8, 2015) (ALJ properly discounted plaintiff's credibility where daily activities were inconsistent with subjective complaints).

## II. The ALJ posed a proper hypothetical question to the VE.

Plaintiff next contends the ALJ's hypothetical does not constitute substantial evidence because it failed to set forth the impairments accepted as true by the ALJ. Specifically, Plaintiff argues the ALJ did not adequately account for his moderate limitations in concentration, persistence, and pace by only restricting Plaintiff to simple work in the hypothetical posed to the VE. Pl.'s Br. at 23-24. A hypothetical question posed to the VE "must precisely describe a claimant's impairments." *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001). Testimony from a VE based on a properly-phrased hypothetical question constitutes substantial evidence. *Id.* While the question must describe the claimant's impairments, "it need not use specific diagnostic or symptomatic terms where other descriptive terms can adequately define the claimant's impairments." *Id.* (internal quotations omitted). It is not acceptable for an ALJ to

simply limit the hypothetical to "simple jobs" where the Plaintiff has the moderate limitations of concentration, persistence, or pace. *See Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996) (reference to simple jobs in the hypothetical not enough to constitute inclusion of limitations of concentration, persistence, or pace). However, a hypothetical including the ability "to do only simple routine repetitive work, which does not require close attention to detail" has been found to be sufficient in covering these particular limitations. *Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir. 1997).

Here, the ALJ's hypothetical limited work to "simple" jobs with "routine and repetitive tasks, with no strict production quota with the emphasis being on a per shift rather than a per hour basis." R. at 47. This description adequately captures Plaintiff's moderate limitations in concentration, persistence or pace. *See Howard*, 255 F.3d at 582 (holding that an ALJ's hypothetical assuming that claimant was able to do simple, routine, repetitive work properly captured Plaintiff's deficiencies in concentration, persistence or pace); *Brachtel,* 132 F.3d at 421 (holding hypothetical assuming an "ability to do only simple routine repetitive work, which does not require close attention to detail" sufficient to describe deficiencies of concentration, persistence, or pace). Because the ALJ's hypothetical properly encompassed Plaintiff's limitations, Plaintiff's argument is without merit.

### III.     Any error at Step Five was harmless.

Plaintiff next contends that the ALJ erred in failing to take into account Plaintiff's self-reported fifth grade reading level. Because of this limitation, Plaintiff contends he could not perform the job of credit-checker and, in the absence of the credit checker job, other jobs do not exist in significant numbers in the economy for him to perform.

After an ALJ determines that a claimant does not have the RFC to perform past relevant work, the ALJ moves to the fifth step of the sequential evaluation process—evaluating whether the claimant's impairments prevent an adjustment to any other work. 20 C.F.R. § 404.1520(g). The Social Security Administration must demonstrate that these jobs exist in significant numbers in the national economy. *Id*. § 404.1560(c).

Even assuming, *arguendo*, that the ALJ erred in failing to include Plaintiff's reading level in the hypothetical posed to the VE, this failure would constitute harmless error. Without the job of credit checker, Plaintiff is still capable of performing the jobs of bench assembler and compact assembler. Together, these jobs represent 423,000 jobs in the national economy and 8,700 jobs in the regional economy of Missouri. R. at 26. These are significant numbers. *See, e.g., Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (holding 500 jobs in Missouri was significant); *Kelly v. Colvin*, No. 4:13-CV-1891-CDP, 2015 WL 94252, at *5 (E.D. Mo. Jan. 7, 2015) (finding two job titles amounting to over 500 jobs in Missouri to be significant). Because Plaintiff has not provided "some indication that the ALJ would have decided differently if the error had not occurred," any possible error with regard to the job of credit checker is harmless. *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012).

## Conclusion

Because substantial evidence on the record as a whole supports the ALJ's opinion, the Commissioner's decision denying benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date: January 26, 2016         /s/ Greg Kays
                               GREG KAYS, CHIEF JUDGE
                               UNITED STATES DISTRICT COURT